Final case to be audited today is Rocky Tran v. Samsung SDI. Good morning, Your Honors. Douglas Applegate, appearing for the appellant, Rocky Tran. Forty-three years ago, the Ninth Circuit, in the Neely case, addressed the framework for deciding motions to dismiss for failure to timely prosecute. So I want to start with the Neely case. In the Neely case, out of the framework, you start with, does the plaintiff's attorney have an excuse? If the plaintiff's attorney's excuse is anything except frivolous, even if it's weak, if the plaintiff has an excuse, then the burden shifts to the defendant to show some prejudice. And then if the defendant shows prejudice, then the court has to exercise its weighing function and exercise its discretion. Trial court didn't do that here. Trial court didn't consider the excuse at all. And it's not a frivolous excuse, it's a damn good excuse. So why didn't Rocky Tran's counsel serve Samsung Korea within a year? Well, there was no deadline, but the real reason is because plaintiff's counsel was moving to have the case returned to state court where there was jurisdiction. There was a continuous challenge to the district court's jurisdiction that had to be resolved before the district court could make any substantive rulings. And waiting until the district court made that ruling was a perfectly reasonable thing to do. It was certainly not a non-frivolous thing to do. I mean, it was certainly not a frivolous thing. That was a non-frivolous excuse. And so the burden shifted to Samsung to show some prejudice. And they couldn't, because they have no prejudice. Samsung was the one who first asked to go into settlement discussions before the complaint was served. They didn't want it served, they wanted to engage in settlement negotiations. Then Samsung, through a co-defendant, removed a federal court before being served. And then Samsung fought the remand of the case back to state court. And the judge took more than seven months to rule on that. Why, in that period of time, should the plaintiff's attorney have gone out and tried to commit complete service under the Hague Convention? There was no reason for it to. And, in fact, if plaintiff's counsel had done what apparently the trial court wanted, secured a summons, served in Korea through the Hague Convention, and then the trial judge did what he should have done and remanded the case back to the superior court because there was no federal question jurisdiction, because there was no diversity jurisdiction, because the court had no subject matter jurisdiction, if they'd done what it was supposed to do, then that Hague service would have been invalid because a federal summons has no force and effect in state court. So it was perfectly reasonable for the plaintiff's attorney to wait for the judge to rule on his jurisdiction. Was there ever any warning before the district court dismissed for lack of prosecution? No, there was no warning whatsoever. And, in fact, this is another point of Neely. Neely says, and this is a direct quote, where plaintiff is presently prosecuting a claim with reasonable diligence, and action cannot be dismissed simply because at some earlier time plaintiff failed to act with diligence. And here there was no warning, and the summons was secured from the district court promptly after the judge incorrectly ruled that he had federal question jurisdiction. That was issued on April the 6th. Hague convention service was completed in Korea on May the 20th. Samsung didn't file their motion for two more months until July. So Samsung didn't even file their motion, and the case was being actively prosecuted. And during the prior year it had been actively prosecuted by plaintiff's continued effort to get it returned to state court where it belonged. And there is no rule that was violated. There was no order that was violated. The 90-day rule on serving defendants in federal court expressly has an exception for Hague convention service because Hague convention service is difficult and timely and can take time and is costly. Counsel, I can understand why you opened on the Rule 41 issue, but you haven't addressed at all the sham defendant issue, which you said you were vigorously trying to get this case back to state court, but you were vigorously opposing the effort to declare, what is it, SDIA in California a sham defendant. Correct, because it's not a sham defendant. Plaintiff should not have been put to the election of having to give up the only American presence that Samsung has in order to pursue its case. Well, the district court basically said, and I think this is the second time you've been told this by another northern district of California judge, that basically that entity didn't have anything to do with these batteries. There's no nexus there, no causation. We were told that once. A Texas plaintiff. By Judge Davila. No. In San Jose. No. No, this was Jeffrey White in San Francisco. You were told once before by Judge Davila that it was sham. No, that was a different plaintiff. That was Mr. North. Mr. North was a plaintiff in Texas. Mr. North was suing for an exploding battery in Texas under Texas product liability law, which is different than California law. What the trial judge did here was it applied collateral estoppel, issue preclusion, in a reverse fashion, because one plaintiff failed to show a nexus between Samsung SDIA and American subsidiaries. Is there any evidence that expressly mentions SDIA, not SDI or Samsung Korea, but SDIA having any involvement with these 18650 batteries? Yes. What is that? So. And the record site for that? Absolutely. In the opening brief, we reproduce from the record, 3ER340, the import specifications that were required to bring this particular battery, the 18650 4-factor Samsung battery, into the United States. On that specification list provided in government, Samsung Korea lists the emergency point of contact for any trouble with this battery as being Samsung SDI America. In addition. Is there any allegation that SDIA handled the battery that went off to Breezy? No. SDIA, this is the other piece of evidence that was ignored by the trial court that was in the record. In their consolidated financial statements, that we also relied on to show alter ego, they state that the business of Samsung SDI America, the American subsidiary, is, quote, market research of small-sized rechargeable batteries. So, the defendant admitted in the paperwork that that was the function of the American subsidiary, was to do market research on small-sized rechargeable batteries. The 18650 was, for a period of time, the largest selling small-sized rechargeable battery that Samsung had. Counsel, you told me moments ago that SDIC was not found to be a sham defendant by another district judge. I'm going to refer you to volume two of the excerpt of record, page 233, in which Judge Davila says, in sum, SDIA has presented clear, convincing, and uncontroverted evidence that there's no connection between SDIA and the lithium batteries at issue in this case. Based on this evidence, there's no legal basis for holding SDIA liable for any of the claims asserted in the complaint. SDI is not in the chain of distribution, and therefore, plaintiff's reliance on Bostick is unavailing. Accordingly, SDIA is a sham defendant whose citizenship is disregarded for purposes of assessing diversity of jurisdiction. Doesn't that directly refute what you just told me a few minutes ago? No. That applies to Mr. North. That is biding on Mr. North in Texas. No, the question was whether or not two Northern District of California judges had ruled that SDIA was a sham defendant. The answer to that question is yes. Judge White said that the rule applies even to California's product liability case, and that's on review here. The other case was not me. I have never been told. This plaintiff has never been told. And no court has ever said that California's product liability law is the same as Texas. Counsel, be very careful about making misrepresentations to a federal judge. I apologize if I was in any way unclear. As I was saying, there is no— You weren't unclear. You were not unclear. You just didn't answer the question truthfully. I would like to talk about the North case, and I spend most of my time in the brief talking about why the North case does not apply. California has an exception to having to be in the chain of commerce. You can have a market participant, a marketing partner, a research partner. It's an exception to the vertical chain of distribution limitation that Texas applies. California has a different rule of products liability than Texas. The North case, which was not involving Mr. Tran, it was not involving California, decided that there was no products liability under Texas law. That is not binding on plaintiff here. There is no collateral estoppel effect that when one plaintiff loses in one jurisdiction, it's binding on all other plaintiffs in every other jurisdiction. And when we go to the sham defendant, Mr. North did not allege that Samsung STIA was an alter ego of Samsung Korea. Mr. Tran did allege that. Mr. Tran showed consolidated financial statements that showed that. Mr. Tran brought out the Washington consent decree where Samsung and STIA were co-conspirators to defeat antitrust rules. All of that showed that this is not the North case. North is not binding, and this does need to be reversed. Thank you very much. I'd like to reserve my time. Good morning. May it please the Court. Robert Gilbreth for the Appalese. I'd like to just very quickly address some of the answers that my esteemed counsel gave to Judge Tallman's questions. Very quickly, though. He was trying to distinguish the Court's holding in the North case by saying, well, that was Texas law, and California law is different. But I would urge the Court to notice that in our district court's decision, the Court was very careful to analyze the base summit factors, which is California's law, and to say that based on the evidence in Mr. Kim's affidavit, where he gives a very detailed declaration stating that STIA has absolutely nothing to do with the 18650 battery. Under California law, STIA would still be a sham defendant. You don't have to say. You can't distinguish North based on the fact that it applied Texas law. Now, wait a minute. You just said that STIA has nothing to do with this battery. That's not quite true. I think your argument is the things that have to do with this battery have nothing to do with this case. I mean, it is the backup you're supposed to call them if trouble, and they handle these batteries. There's no evidence they handled this battery, but you can't quite say they have nothing to do with this battery. Well, I think I can, Your Honor, and I'm open to your disputing me on that, of course. But based on my reading of Mr. Kim's affidavit, I am convinced that STIA had nothing to do with this battery. Well, I shouldn't say this battery. I think the evidence is pretty clear that you're right with respect to this battery that exploded. That's right. But I think they have something to do with, I'll call it, this battery in the generic sense. I think it is in terms of the 18650 battery. STIA had nothing to do with it. And I would just say to the Court, if you look at that battery, it's just slightly larger than a standard AA battery. So you have this evidence in the record where they're talking about Tesla wanting to use this battery or using this battery, and it just doesn't make any sense. I mean, a little battery like that that powers a vape machine being used in a Tesla. But that aside, moving on to the question. Can you address this? Your opposing counsel referred to 3R340 and lists several emergency contacts, including STI Taiwan and one is STI America. Can you address that? And I know there's a Kim declaration. I mean, is this maybe an issue? There should be jurisdictional discovery. I don't think there needs to be any discovery because I think, as the District Court correctly concluded, the evidence conclusively, or at least clear and convincingly, establishes that SDIA had nothing to do with this battery, notwithstanding that one stray reference that maybe you can call them for, if you want to have a general helpline, that's our American presence. So, no, there is no need for discovery. And I would note that on the issue of discovery, what you had from the plaintiffs was a boilerplate generic request for discovery. What it said was, and this is in the record at 2ER98, the plaintiff said, if the court is not convinced that plaintiff has adequately shown a possibility of stating a claim against SDIA, then plaintiff requests that jurisdictional discovery be allowed, not just from SDIA, but from Tesla and SDI Korea. So, there is no specific need there, showing there, of a need for sort of specific discovery, which is grounds to deny. And I would cite the court to cases, for example, a case from the Central District of California, TPSU Telecom v. AT&T. That's at 223 Fed 2nd, 1089, where the court just said, look, you can't, a plaintiff can't avoid a fraudulent joinder finding by arguing that it might turn up some basis for its claims with future discovery. So, and by the way, they had plenty of time to do discovery, which they never did. I mean, this motion to dismiss, or actually the court's order granting the dismissal,  that being said, I'll move on just briefly to the question. I know, Judge Tallman, you steered the plaintiff away from this a little bit, but on the issue of prejudice, it is not, prejudice is not the sine qua non that the plaintiffs think it is. They like to cite to the Neely case, but a much more recent case from this court, albeit a 1991 case, but still 11 years later, the Morris v. Morgan Stanley case, which we cite in our brief, the court says that failure to prosecute diligently is sufficient by itself to justify dismissal, even in the absence of a showing of actual prejudice to You know, I can't remember, maybe you can tell me, how long was the period in that case? The period in that case, I thought that question might come up, so I wrote it down, it was almost two years, so less than two years, so a little bit longer in that case. But the court said some of the factors that get considered in this analysis are, one, the need to manage its docket, two, the public interest in the expeditious resolution of litigation, and three, the policy favoring the disposal of cases, all of which were undermined, we submit here, by the lengthy delay. A number of reasons were proposed that would explain or maybe even justify the delay. How do you respond to the reasons that were advanced? We have responded to them, of course, in our brief. Here I would respond to, for example, the idea that one of the ideas they have raised, although counsel didn't bring it up yet here, was this notion that, well, under California law, we have up to two years, it's a strange law to me, but two years after you file suit and you don't have to serve the defendant. And the Neely court looked at that and considered that in the plaintiff's favor. However, Neely on that point is distinguishable because in that case service was accomplished before the case was removed. And here, once you had removal, federal law kicked in, displaced that California law entirely so that they had 90 days in which to serve the complaint. So that's one of their. But there's no argument here that the complaint was served out of time. The argument here is that it was a failure to prosecute. It was served. I'm sorry? There's no argument here that the complaint is served out of time with the consequence that that's the reason to do it, to dismiss. The reason, the argument here is there's a delay in the prosecution. Yes, yes. It was a very lengthy delay. I know the court is aware, but the time periods are, it's like 440 days. But nonetheless, you're correct, Your Honor. The point here is, though, that as one of the cases we cite in our brief, once the statute of limitations is run, this is one factor to consider, is a defendant is entitled to believe, hey, we're free and clear at this point. So what, assuming that we can get to this question, what detriment has your client suffered as a result of the delay? As a result of the delay, we haven't identified for the court any specific prejudice in terms of, say, a witness dying or that sort of thing. But there is inherent detriment in the delay of prosecuting a claim, and that's why courts, for example, Morgan Stanley said, look, you don't have to show actual prejudice. Yes, there is detriment. I can't point the court to a specific instance of a witness dying or, you know. So if this were allowed to go forward, it's not that we're in a different position with respect to proof or any of that? We would have brought that before the district court if we had an example of a witness dying. So on the issue of covered discovery, oh, the request to amend. So the plaintiff's, one of their big complaints, and to me, I don't know, it seems to me like their real complaint, the gist of their complaint, is that darn district court figured out what we were trying to do here and, you know, just cut us off at the pass, didn't give us a second chance. And that's one of their complaints is, well, we didn't get to amend. But the dismissal here, that's not an issue because the dismissal here wasn't based on a pleading defect or deficiency so much as it was a proof problem. Again, you had Mr. Kim's affidavit saying, clearly and convincingly establishing that SDIA had nothing to do with this battery. So the problem they had was not that the court said your pleadings are deficient. The court said the proof here, and the proof you put on doesn't rebut it, is the proof is the problem. And courts routinely dismiss defendants as sham defendants based on piercing the pleadings and the evidence establishing that they are not proper, legitimate defendants. And so I think that covers the points that the plaintiffs have focused on in their reply brief as the real grounds, I believe, the decision ought to be reversed. And I think that we have demonstrated that there is no merit to any of those arguments. So I will yield the balance of my time if the court has no further questions. Great. Thank you. Mr. Kim's affidavit. That is the entire problem for the court's determination on the sham defendant issue. It was relied on in Mr. Kim's affidavit. Rule 12, paragraph C, says that when you have a speaking motion, it is the obligation of the trial court to convert it to a Rule 56 motion and allow for discovery. And we cited that case, and that case is San Diego Gas and Electric. The court was required to allow the discovery that was requested because it was a speaking motion. It was based on an affidavit. Now, that was why I was trying to tell Judge Tallman that the San Jose judge never told me anything because that was a different case. And that was a different party, and they were using it as a matter of law. That as a matter of law, there can be no connection between Samsung America and this battery. The Texas plaintiff didn't show any connection. We did. We showed that SDIA was the emergency contact in the United States. We showed that SDIA was a wholly owned subsidiary. We showed that SDIA had conspired previously with Samsung Korea to avoid antitrust rules, which is a hallmark of alter ego, using the corporate form for improper purposes. And we offered to amend to allege all of those jurisdictional facts with specificity. Counsel said, well, why didn't you do that in the state court? Because jurisdiction wasn't an issue in the state court. The amendments were required specifically to address the sham defendant argument and to distinguish from the North case, which was a Texas case. And so under Rule 12, Paragraph C, the court was obligated to convert this to a 56 motion and allow the discovery that was requested. So the court erred both in the sham defendant ruling and in the timeliness. Thank you very much. Thank you. The case has been submitted, and you're adjourned.
judges: FLETCHER, TALLMAN, LEE